2019 IL App (1st) 190200-U

THIRD DIVISION
December 18, 2019

No. 1-19-0200

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| CARLOS VILLELA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner, | ) | Cook County |
| | ) | |
| and | ) | 2010 D 9098 |
| | ) | |
| MARTHA VILLELA, | ) | Honorable |
| | ) | Robert W. Johnson, |
| Respondent-Appellant, | ) | Judge Presiding |
| | ) | |
| (Bradley Chelin, Appellee.) | ) | |

_____

PRESIDING JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Because petitioner did not attach transcript of hearing on her attorney's fee petition and meaningful review of circuit court's order cannot be had without the transcript, presumption of correctness governs this case.

¶ 2    In 2013, petitioner Martha Villela and Carlos Villela divorced. A judgment of dissolution

of marriage was entered, which included a Marital Settlement Agreement (MSA).

¶ 3    Shortly thereafter, problems arose. In rapid succession, each party accused the other of materially violating the terms on the MSA. These accusations were memorialized in dueling petitions for rule to show cause that Martha and Carlos filed against one another. Around December 2013, Martha hired attorney Bradley Chelin, the appellee in this appeal.

¶ 4    On May 3, 2017, the circuit court entered an order directing Carlos to contribute $21,620 towards Martha's post-decree legal fees. In total, from December 2013 to January 2018, Chelin racked up $34,839 in attorney fees.

¶ 5    In December 2017 and January 2018, the court entered a series of orders directing Carlos to turnover to Chelin $21,620 upon the sale of certain investment property in Chicago. That sale took place on January 25, 2018. The same day, Carlos tendered a check to Chelin for $22,135.

¶ 6    On September 13, 2018, Chelin was granted leave to withdraw as Martha's attorney. On October 11, 2018, Martha hired attorney Joseph Gettleman.

¶ 7    On October 24, 2018, Chelin filed a "Petition for Setting Final Attorney's Fees and Costs and to Clarify Prior Contribution Orders." In that petition, Chelin explained that from December 2013 to January 2018, he racked up $34,839 in fees. Of that amount, $18,050 had been paid to Chelin by Martha, and $900 had been paid to Chelin by Carlos's tenants during citation proceedings, leaving an unpaid balance in the amount of $15,889. In his petition, Chelin sought, among other things, permission from the court to withdraw the funds from the January real estate sale from his IOLTA account to satisfy the remaining balance due.

¶ 8    On December 3, 2018, the court held a four-hour hearing on Chelin's petition. According to Chelin, "[n]o court reporter was present at this hearing, and there is no transcript." Our review of the record confirms that assertion.

¶ 9    On January 4, 2019, the court entered an order stating that the May 3, 2017 order was "deemed to be an award of contribution of attorney's fees" and that "the award of contribution is properly payable to Attorney Chelin." In the same order, the court (1) awarded Chelin $3,654 in fees for work performed between May 4, 2017 and January 25, 2018; (2) allowed Chelin to withdraw $15,889 from his IOLTA account to satisfy the total remaining balance for attorney's fees that Martha owed to Chelin

¶ 10    In her appellate brief, Martha, who is now proceeding *pro se*, raises two main arguments. First, she contends that the circuit court erred during the January 4, 2019 hearing by failing to consider documentary evidence (check stubs) which she claims would have negated Chelin's claim that Martha owed an additional $15,889. And second, she contends that Chelin's fees were unreasonable under Illinois Rule of Professional Conduct 1.5.

¶ 11    To resolve these issues, we need to know what evidence the court had before it when it ruled. And to know what evidence the court had before it when it ruled, we need a transcript of the January 4, 2019 hearing. We do not have that transcript. Without it, we have no way of knowing what evidence was presented to the court. We have no basis for finding error in anything the trial court did.

¶ 12    When this court is faced with an inadequate record on appeal, as is the case here, supreme court precedent requires that we presume that the circuit court's order was in conformity with the law and properly supported by the evidence. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393 (1984). We have no basis to take any action other than to affirm the trial court's judgment.[1]

¶ 13    Affirmed.

---

[1] Martha sought leave to amend her reply brief and provide us with additional information that was not contained in the record on appeal. We denied that motion. "To the extent that arguments in a brief rely on documents that are not properly part of the record, the reviewing court will disregard them." *Garvy v. Seyfarth Shaw LLP*, 2012 IL App (1st) 110115, ¶ 26.